UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS,<br><br>        Plaintiff,<br>v.<br><br>LSP PRODUCTS GROUP, INC.,<br><br>        Defendant. | Case No. 1:20-cv-00436-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant LSP Products Group's Motion for Summary Judgment (the "Motion"). Dkt. 28. The Court held a hearing on the Motion on June 9, 2022, and took it under advisement. Now, for the reasons stated below, the Court GRANTS the Motion.

## II. BACKGROUND

In May 2012, Melissa Norris and Richard Meyers (collectively, the "Buyers") purchased a newly built house at 125 East Lone Creek Drive, Eagle, Idaho. On or about December 29, 2016, a water leak occurred in the master bathroom of the house. The leak flooded the house, causing damage to the house and to blinds, the oven, and the dishwasher in the house. The Buyers filed a claim with their insurer, Plaintiff Safeco Insurance Company of Illinois ("Safeco"). Safeco covered the Buyers' losses under its insurance policy.

Safeco then brought this subrogation action against Defendant LSP Products Group,

Inc. ("LSP"), in an attempt to recover the amounts it paid to the buyers. Safeco claims LSP is the manufacturer of the toilet plumbing product, which Safeco alleges was defective and caused the leak. That plumbing product is a water supply line that connects to a toilet. On each end of the water supply line is a plastic coupling nut. Safeco alleges that the plastic coupling nut is prone to fracture during the ordinary and intended use of the water supply line. Dkt. 1, at ¶ 10. Safeco's Complaint contains eight claims: Count I – Strict Liability (Design Defect); Count II – Strict Liability (Manufacturing Defect); Count III – Strict Liability (Failure to Warn/Instruct or Inadequate Warning/Instruction); Count IV – Negligence (Negligent Design); Count V – Negligence (Negligent Manufacture); Count VI – Negligence (Failure to Warn/Instruct or Inadequate Warning/Instruction); Count VII – Breach of Warranty; and Count VIII – Malfunction/Circumstantial Evidence of Defect. Dkt. 1. Each of these claims is brought under Idaho state law.[1]

In its Motion, LSP contends that the tort claims (Counts I–VI and VIII) are all barred by Idaho's economic loss rule and that the contract claim (Count VII) fails as a matter of law because there was no privity of contract, no third-party beneficiary, and the statute of limitations for an express breach of warranty expired.

Safeco did not respond in its brief to LSP's specific arguments about the contract claim (Count VII), asserting only that this issue is moot because the parties had discussed a voluntary dismissal of the claim. At the hearing, Safeco requested to dismiss the claim, and the Court granted that request under Federal Rule of Civil Procedure 41(a)(2). Thus,

---

[1] The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

MEMORANDUM DECISION AND ORDER - 2

Count VII of the Complaint is DISMISSED WITH PREJUDICE.

That leaves only one issue for the Court to decide: whether the economic loss rule bars the tort claims.

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

LSP argues that Safeco's tort claims are all barred under Idaho's economic loss rule.

That rule prohibits recovery of economic losses in strict products liability cases and negligence cases in general.[2] *Blahd v. Richard B. Smith, Inc.*, 108 P.3d 996, 1000 (Idaho 2005). "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 544 P.2d 306, 309 (Idaho 1975). It does not include "property damage," which "encompasses damage to property other than that which is the subject of the transaction." *Id.* At issue is whether the damage to the house and items within it is "economic loss" or "property damage."

LSP's contends that Idaho's economic loss rule depends on the subject of the transaction and that the whole house, and not only the plumbing product, was the subject of the transaction. As such, damage to the house is economic loss. LSP argues that when an item is purchased as part of a larger transaction, the item is integrated into the whole subject of the transaction. For this principle, LSP cites *Aardema v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 511 n.2 (Idaho 2009); *Tusch Enters. v. Coffin*, 740 P.2d 1022, 1025–26 (Idaho 1987); and *Blahd*, 108 P.3d at 1000.

On the other hand, Safeco argues that even if the house were the subject of the transaction, the economic loss rule applies only to the defective property itself, which in this case was only the plumbing product. Safeco distinguishes this case from the facts in

---

[2] There are two exceptions to the economic loss rule: "(1) where a special relationship exists between the parties, or (2) where unique circumstances require a reallocation of the risk." *Aardema v. U.S. Dairy Sys., Inc.*, 215 P.3d 505, 512 (Idaho 2009). Safeco makes no argument that either exception applies here.

*Tusch Enterprises* and *Blahd*. In both *Tusch Enterprises* and *Blahd*, the distinct defect was the foundation of buildings. *Tusch Enters.*, 740 P.2d at 1024–25; *Blahd*, 108 P.3d at 999. Whereas a structure's foundation is necessarily integrated into the whole structure, Safeco contends that a small, replaceable plumbing product is not integrated into the whole house. In support, Safeco points to *Oppenheimer Industries, Inc. v. Johnson Cattle Co., Inc.*, 732 P.2d 661 (Idaho 1986); and *Brian and Christie, Inc. v. Leishman Electric, Inc.*, 244 P.3d 166 (Idaho 2010). In *Oppenheimer Industries, Inc.*, the court held that the economic loss rule did not bar a tort claim alleging that the brand inspector's negligence caused the loss of the plaintiff's cattle. 732 P.2d at 664. In *Leishman Electric, Inc.*, the court held that the economic loss rule did not apply to a claim about a subcontractor's negligence in connecting neon signs to the electrical power. 244 P.3d at 170.

Alternatively, Safeco argues that the house is not the subject of the transaction. In Safeco's view, the underlying contract that gave rise to this lawsuit was the installer's purchase of the plumbing product rather than the Buyers' purchase of the house. Additionally, Safeco suggests that some of the damaged property—i.e., the blinds, oven, and dishwasher—may not have been purchased as part of the house. Safeco also claims that the damages for additional living expenses are recoverable because they are "parasitic to an injury" to property. *See Duffin v. Idaho Crop Improvement Ass'n*, 895 P.2d 1195, 1200 (Idaho 1995) ("[E]conomic loss is recoverable in tort as a loss parasitic to an injury to person or property.").

### A.  Idaho's Economic Loss Rule: Subject of the Transaction or Defective Part?

The parties disagree about the applicable economic loss rule. Does it turn on the

subject of the transaction or on the discrete defective part?

While the *application* of Idaho's economic loss rule often "rel[ies] on factual comparisons from previous decisions," the *rule* is clear—"[e]conomic loss has been defined as, but not limited to, costs of repair and replacement of defective property which is the *subject of the transaction*, as well as commercial loss for inadequate value and consequent loss of profits or use." *Aardema*, 215 P.3d at 510–11 (emphasis added) (cleaned up). Idaho's economic loss rule is not limited to the defective product itself. *See Blahd*, 108 P.3d at 1001 ("The Blahds purchased the house and lot as an integrated whole. Like the leveled lot and duplex in *Tusch Enterprises*, the subject of the transaction in this case is both the lot and the house."). Other jurisdictions have different economic loss rules, and some of those rules focus on the defective product itself rather than the subject of the transaction. *See, e.g.*, *Ajose v. Interline Brands, Inc.*, 187 F. Supp. 3d 899, 907 (M.D. Tenn. 2016) (applying Pennsylvania's economic loss rule and holding that "recovery under strict liability is permissible when the damage goes beyond the defective product itself"). But Idaho's rule defines economic loss as the "subject of the transaction."

Thus, Safeco's argument that the applicable rule is not the "subject of the transaction" but rather the discrete "defective product at issue" fails. *See* Dkt. 34-1, at 1, 11–15.[3] What's more, the caselaw Safeco relies on here is inapplicable. *Oppenheimer Industries, Inc.* and *Leishman Electric, Inc.* both involved claims of negligent services in which there was no defect in any product. *Oppenheimer Indus., Inc.*, 732 P.2d at 664

---

[3] Unless of course, the subject of the transaction is only the plumbing part and not the entire house. Discussed below.

(holding the economic loss rule did not apply where a brand inspector's negligent inspection caused the loss of cattle); *Leishman Electric, Inc.*, 244 P.3d at 170 ("In this case, there was no defective property which was the subject of the transaction.").

Because Idaho's economic loss rule turns on the "subject of the transaction," the critical question in this case is whether the house or the plumbing product was the subject of the transaction.

### B. The Subject of the Transaction: House or Plumbing Product?

As stated earlier, the application of Idaho's economic loss rule has often involved comparing the facts to those of other cases. *Aardema*, 215 P.3d at 511. Until *Aardema*, courts relied on the factual comparisons in lieu of a definition for "subject of the transaction." *Id.* Then in *Aardema*, the Idaho Supreme Court provided such a definition after reviewing Idaho's economic loss rule caselaw: "This line of cases delineates a clear pattern that [the Idaho Supreme Court] has implicitly defined the 'subject of the transaction' by the *subject matter of the contract*." *Id.* (emphasis added). Idaho caselaw illustrates this definition.

In *Tusch Enterprises*, the economic loss rule barred a tort action for damages to duplexes caused by defective foundations. 740 P.2d at 1025–26. Though the discrete problem was the foundation, the subject of the transaction was the duplexes' sale. *Id.* at 1025 ("The structural defects have caused damage to the duplexes themselves and to the parking lot, and have caused losses in rental income, but Tusch Enterprises has suffered no personal injuries and has suffered no damage to property other than that which was the subject of the duplex sales transaction."); *Blahd*, 108 P.3d at 1000 ("This Court later

explained in another case that [in *Tusch Enterprises*] it considered the duplex itself, rather than its construction, to be the subject of the transaction.") (cleaned up).

The foundation was also the discrete problem in *Blahd*, causing damage to the house. 108 P.3d at 1000. The *Blahd* homeowners tried to distinguish their case from *Tusch Enterprises* "by noting the buyer in *Tusch Enterprises* did not sue the contractor who leveled the lot and did not allege the property had been leveled negligently." *Id.* In other words, the *Blahd* homeowners believed they could avoid the economic loss rule by suing parties responsible for the foundation itself, but the Idaho Supreme Court found this distinction "immaterial." *Id.* at 1000–01. Indeed, the court emphasized that the rule does not turn on "the status of the party being sued." *Id.* at 1001. "The Blahds purchased the house and lot as an integrated whole." *Id.* Thus, "[l]ike the leveled lot and duplex in *Tusch Enterprises*, the subject of the transaction in this case is both the lot and the house." *Id.*

In *Blahd*, the Idaho Supreme Court broadly stated that the "subject of the transaction" is the equivalent of "the subject of the lawsuit." *Id.* at 1000. Later, in *Aardema*, the Idaho Supreme Court "read this overbroad language from *Blahd* to mean that the *underlying contract* that is the subject of the lawsuit is the subject of the transaction." *Aardema*, 215 P.3d at 511 n.2.

These cases focus on what was purchased in applying the economic loss rule. It is all too tempting to distinguish the plumbing product here from the foundations in *Tusch Enterprises* and *Blahd* by looking at the function of the defective piece: a house cannot function without a foundation, but a house can function, to some extent, without this

plumbing product.[4] However, looking at functionality misses the mark.[5] Instead, applying

Idaho's economic loss rule, as defined in *Aardema*, requires the Court to consider what the

Buyers purchased. Did they purchase the plumbing product or the house? There is no

factual dispute here. The Buyers purchased the house with the plumbing product already a

part of the house. Therefore, the house is the proper subject of the transaction. What that

means is that the economic loss rule bars tort claims for damage to the house and the

personal property purchased as part of the house transaction.[6]

---

[4] In Nevada, a federal district court cautioned overlooking the integral role of small parts of a building. The court held that a flush valve was an "integrated and integral part of the [building]," so when the defective flush valve damaged the building, the economic loss rule barred the tort claim. *Fireman's Fund Ins. Co. v. Sloan Valve Co.*, 2011 WL 5598324, at *3 (D. Nev. Nov. 16, 2011). The Court explained:

> The simple positioning or location of a component piece of a larger product is not determinative of the question of whether it is an integral component. . . . This conclusion is supported by simple common sense. No modern building can be considered complete or functional without flushing toilets, *i.e.*, flush valves or flushometers are necessary, integrated parts of modern buildings at least as much as doors, windows, or plumbing fittings.

*Id.* (cleaned up).

[5] Prior to *Aardema*, which defined "subject of the transaction" as "subject of the *underlying contract*," 215 P.3d at 511 n.2, this Court applied a version of the economic loss rule that focused on functionality rather than the underlying contract in a case involving a defective tractor and non-defective tractor attachments, *C & S Hamilton Hay, LLC v. CNH Am. LLC*, 2008 WL 504031, at *3 (D. Idaho Feb. 21, 2008). In that case, this Court held that the economic loss rule did not bar a tort claim for damage to tractor attachments when the defective tractor caught on fire. *Id.* This Court distinguished *Blahd*, explaining, "The tractor and the attached implements do not constitute an 'integrated whole.' When dealing with a building lot and a house it is impractical to consider them *functioning* separately. . . . [But] the attachments to the tractor were just that, temporary attachments . . . ." *Id.* (emphasis added). After *Aardema*, this Court has not looked at functionality but at the underlying contract. *See, e.g.*, *L.J. Gibson, Beau Blixseth v. Credit Suisse AG*, 2016 WL 4033104, at *14 (D. Idaho Jul 27, 2016) ("Plaintiffs' negligence claims under Idaho law are subject to the 'subject of transaction' test. The 'underlying contract' for Plaintiff's tortious interference claims is the purchase agreements."); *O Bar Cattle Co. v. Owyhee Feeders, Inc.*, 2010 WL 2652289, at *2 (D. Idaho June 30, 2010) ("Applying [the *Aardema*] definition here, the underlying contract is a bailment agreement whereby Owyhee Feeders would keep, care for, feed, water and medicate O Bar's cattle in return for consideration. As such, the 'subject of the transaction' is the bailment agreement."); *see also Adams v. United States*, 2010 WL 1248286, at *3 (D. Idaho March 24, 2010) (holding that Idaho's economic loss rule did not apply because the plaintiffs "purchased nothing").

[6] The Court recognizes that different jurisdictions have reached different conclusions in cases with almost identical fact patterns. The Court is aware of two cases where the issue was whether the economic loss rule

---

## C. What Does the Subject of the Transaction Include?

Having resolved that the house is the subject of the transaction and that the economic

loss rule applies to it, the Court next looks to the parties' arguments regarding damages to

the blinds, oven, and dishwasher, and damages related to living expenses. LSP argues that

the blinds, oven, and dishwasher were all part of the house transaction and that the living

expenses are actually lost rental income, which is barred by the economic loss rule.

Safeco's response is that "Defendant makes no argument that the personal property was

even acquired with the Residence" and that the living expenses are "parasitic to an injury"

to the property and are thus recoverable. Dkt. 34-1, at 16.

As to the personal property (i.e., the blinds, oven, and dishwasher), Safeco's

contention is without support. In its Motion, LSP sought dismissal of all claim and

damages. As such, LSP moved to dismiss damage claims related to the personal property

and thereby at least impliedly argued that the personal property was acquired with the

residence. At the hearing, LSP conceded that if the personal property was acquired

separately from the house, the economic loss rule would not bar recovery. LSP sufficiently

---

barred recovery of damages to a house caused by a water supply line with a defective coupling nut. *Ajose*, 187 F. Supp. 3d at 907–08; *Com. & Indus. Ins. Co. v. Watts Water Techs., Inc.*, 2016 WL 6471247 (D. Haw. Oct. 31, 2016). In *Ajose*, the court applied Pennsylvania law and held that the economic loss rule did not bar recovery of damage to the house. 187 F. Supp. 3d at 907–08. But in *Watts Water Technologies, Inc.*, a different court applying Hawaii law came to the exact opposite conclusion, holding that the economic loss rule barred recovery of damage to a house even though the defective coupling nut at issue was bought after the house. 2016 WL 6471247, at *2, 7.

      Other cases with similar defects further illuminate the different approaches to the economic loss rule among states. In Georgia, a court held that when connectors for a water heater were defective and caused damage to the floors and household appliances, the economic loss rule did not bar the claim. *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1228, 1238 (N.D. Ga. 2021). Meanwhile, in Nevada, a court held that a flush valve was an "integrated and integral part of the [building]," so when the defective flush valve damaged the building, the economic loss rule barred the tort claim. *Fireman's Fund Ins. Co.*, 2011 WL 5598324, at *3.

MEMORANDUM DECISION AND ORDER - 10

raised the issue in these instances.

Safeco has not submitted any fact as to when the blinds, oven, or dishwasher were purchased and placed in the house. *See* Dkt. 35 (Statement of Disputed Facts). Nor has Safeco even alleged in the Complaint or elsewhere that the Buyers purchased the blinds, oven, or dishwasher separately from the house. *See* Dkt. 1.

While the Court cannot grant summary judgement where there is a genuine dispute of a material fact, the non-moving party must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc.*, 247 F.3d at 997. "If the non-moving party fails to make this showing the moving party is entitled to judgment as a matter of law." *Id.* Safeco has failed to meet its burden. It has not provided specific facts that the Buyers purchased the blinds, oven, or dishwasher separately from the house. Because Safeco has failed to make this showing, LSP is entitled to summary judgment on the tort claims as they pertain to the personal property as well as to the house itself.

As for the "additional living expenses" that Safeco argues are recoverable (Dkt. 34-1, at 16), these are not living expenses at all but rather are lost rental income (Dkt. 29, at 4). According to Safeco's Exhibit B, the house was a rental property. Dkt. 34-4, at 2; *see also* Dkt. 34-6, at 68–76 (copies of the property management contact and rental agreement). "Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits for use." *Salmon Rivers*, 544 P.2d at 309. Lost rental income clearly falls within the purview of the economic loss rule. *Tusch Enters.*, 740 P.2d at 1025.

MEMORANDUM DECISION AND ORDER - 11

Because the economic loss rule applies to the house, blinds, oven, dishwasher, and lost rental income, LSP is entitled to judgment as a matter of law, so the Court GRANTS the Motion as to Counts I–VI, and VIII.

## V. CONCLUSION

The Court GRANTS Safeco's request to voluntarily dismiss Count VII and DISMISSES that claim WITH PREJUDICE under Federal Rule of Civil Procedure 41(a)(2). Because of this dismissal, LSP's Motion is MOOT as to Count VII. This leaves Counts I–VI and VIII. Each of those claims is barred by the economic loss rule. Accordingly, the Court GRANTS LSP's Motion for Summary Judgment as it applies to Counts I–VI and VIII.

## VI. ORDER

The Court HEREBY ORDERS:

1. Count VII of the Complaint (Dkt. 1) is DISMISSED WITH PREJUDICE.

2. LSP's Motion for Summary Judgment (Dkt. 28) is MOOT as to Count VII.

3. LSP's Motion for Summary Judgment (Dkt. 28) is GRANTED as to Counts I–VI and VIII.

4. Judgment will be issued concurrently with this Order.

DATED: August 4, 2022

David C. Nye
Chief U.S. District Court Judge